UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MP VISTA, INC., HABIB PETROLEUM CORP., AND BAY POINT OIL CORP., INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | § § § § § § § | CIVIL ACTION NO. 2:2010-cv-00158 SECTION "G" MAGISTRATE 4 |
| versus | § § | HON. NANNETTE JOLIVETTE BROWN |
| MOTIVA ENTERPRISES, LLC AND SHELL OIL COMPANY | § § § | MAGISTRATE KAREN WELLS ROBY |

### MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO TRANSFER CASE TO SECTION "B" OF THIS COURT

Defendants respectfully move to transfer this case back to Section "B." This case was one of 18 civil cases reallotted from Section "B" to Section "G" by a Transfer Order filed on October 7, 2011, following the appointment of Judge Nannette Jolivette Brown. Defendants acknowledge that the Court has an interest in allocating cases among its Sections evenly, and Defendants certainly would feel comfortable proceeding before Judge Brown. However, this case is the last remaining proceeding in a complex set of litigation that Judge Lemelle has presided over since 2004. Local Rule 3.1.1E provides that cases which involve the same subject matter as pending or prior litigation should be transferred to the Section handling the first-filed case. Indeed, on two prior occasions, other federal judges have recognized that it would serve judicial economy for Judge Lemelle to handle this case based on his extensive experience with other litigation arising out of the same incident. Accordingly, Defendants respectfully submit that the interests of judicial economy militate against a change in presiding judges at this late stage.

I.    **History of the Sulfur Fuel Incident and Motiva's Voluntary Remediation Efforts**

This case arises out of the so-called "sulfur-fuel incident" that occurred at the refinery operated by Defendant Motiva Enterprises LLC in Norco, Louisiana. Motiva is a joint venture company that supplies Shell-branded service stations in the Gulf Coast and East Coast regions of the country. In May 2004, Motiva discovered that some of the gasoline produced at its Norco refinery contained elevated levels of elemental sulfur and hydrogen sulfide. Motiva further discovered that some of the affected gasoline had already been delivered to independently operated Shell-branded service stations in Louisiana, Mississippi, and Florida, and that some of the fuel had been sold to retail consumers.

Although not dangerous in itself, the high-sulfur gasoline damaged the fuel gauges of some models of cars, causing the gas gauge to constantly read "full." Motiva immediately undertook extensive efforts to inform the public of the problem. Motiva also asked all of the independent service station dealers and other retailers who operated Shell-branded stations in the affected regions to stop selling gasoline until the problem could be addressed. Motiva arranged to pump out or treat the high-sulfur gasoline at each affected service station. During this period—which lasted between one and seven days, depending on the location—the affected dealers were unable to sell fuel, although the were able to continue operating their convenience stores, car washes, and other ancillary businesses. Also, some stations were able to continue selling premium grade fuel (which was largely unaffected), and Motiva gave financial incentives to encourage dealers to sell premium at the price of regular grade during the impact period. After the incident, Motiva voluntarily reduced the dealers' rent based on the number of days that they were unable to sell fuel, and Motiva offered dealers various price incentives and rebates to enable dealers to cut their retail (or "street") prices in order to convince customers to come back to their stations.

For consumers whose cars were affected, Motiva quickly set up a claims process that enabled consumers to have their fuel gauges repaired at Motiva's expense. Motiva also sent each affected customer a $50 Shell gift card and sent a $5 gift card to each Shell credit card holder to encourage them to return to Shell-branded stations.

## II. History of the Sulfur Fuel Litigation

Despite Motiva's voluntary remediation efforts, two sets of litigation were filed within a few days of the sulfur incident: (1) a total of 26 consumer class actions filed by different groups of consumers, which were consolidated into *In re High Sulfur Content Gasoline Products Liability Litigation*, MDL Docket No. 04-1632, and (2) one putative class action filed by a single plaintiff seeking business-interruption damages on behalf of hundreds of Shell-branded dealers and operators in the three affected states, *Liberty Shell, Inc. v. Shell Oil Co. et al.*, No. 04-1770. Judge Lemelle was assigned to preside over both cases.

In the consumer products liability cases, after two years of litigation and an extensive fairness hearing, on September 7, 2006, Judge Lemelle certified a settlement class that eventually resolved all outstanding consumer claims.[1]

By contrast, in the *Liberty Shell* case filed on behalf of service stations dealers whose business was interrupted, Judge Lemelle **denied** class certification after a hearing on July 26, 2006. Ex. 3 [Minute Entry of July 26, 2006]. Judge Lemelle concluded that, because the circumstances of each individual service station are unique, the element of predominance could not be established because issues of causation and damages would be highly individualized in the proposed class of dealers. Ex. 4 at 48-49. In denying the motion for class certification, Judge

---

[1] Counsel for some of the consumer plaintiffs appealed from the allocation of attorneys' fees in the consumer class action settlement and, following remand by the Fifth Circuit, all issues related to attorneys' fees were reallotted to Judge Zainey. Judge Lemelle, however, handled all of the substantive issues relating to the facts and merits of the case.

3

Lemelle invited the plaintiff to attempt to cure the problems that he pointed out with respect to the difficulty of proving class-wide causation of business losses:

> So the motion is denied, but again, I really mean that its without prejudice because, you know, who knows. I might get something that would convince me to do something else.

Ex. 4 at 50.

Rather than try to cure the predominance problems or move again for class certification before Judge Lemelle, the single plaintiff in *Liberty Shell* elected to settle its individual claims, and that case was voluntarily dismissed on March 20, 2007. Ex. 5. In the interim, however, the instant group of Plaintiffs—all of whom are Shell dealers in Florida represented by the same counsel as Liberty Shell—filed this suit in the District of Delaware, proposing a putative class essentially identical to the one rejected by Judge Lemelle.

On December 29, 2008, the District of Delaware transferred venue to this Court because "Judge Lemelle of the Eastern District of Louisiana has handled and expended substantial resources on at least two prior retailer and consumer class actions arising out of the same underlying fuel contamination incident at issue in this case." Ex. 1 at 5 [Venue Order]. The Delaware District Court concluded that it "would be a waste of judicial resources" to litigate the class claims in another district when Judge Lemelle "already has experience with these same issues: involving substantially the same transactions and occurrences." *Id.* at 5.

After the case was initially transferred to this Court, it was randomly assigned to Judge Eldon Fallon. Very quickly, however, Judge Fallon recognized that "the subject matter of [this] case is related to that of [*Liberty Shell*] considered by Section "B" (4) of this Court." Ex. 2 [Transfer Order]. Accordingly, Judge Fallon transferred the case to Judge Lemelle pursuant to Local Rule 3.1.1E, which provides that related proceedings "must be transferred" to the docket

of the original judge in order to "promote judicial economy, conserve judicial resources, and avoid potential forum shopping." L.R. 3.1.1E.

The same concerns that warranted transfer of venue to this District, as well as Judge Fallon's prior transfer to Judge Lemelle, militate in favor of keeping this case before Judge Lemelle now. Indeed, in denying class certification in *Liberty Shell* without prejudice, Judge Lemelle specifically invited Plaintiffs' counsel to make another attempt to try to "convince me to do something else." Ex. 4 at 50. Fearing that they had nothing new that would convince Judge Lemelle, Plaintiffs' counsel instead tried to flee to another District in an effort to use forum shopping to achieve a different result in this case than they had achieved in *Liberty Shell*. Plaintiffs' venue gambit was unsuccessful, and the Delaware District Court correctly recognized that it would be most appropriate for Plaintiffs' renewed arguments in favor of class certification to be considered by the same judge who had already considered them once before to determine whether Plaintiffs in this case are really presenting anything new.

For the same reasons, Defendants respectfully submit that this case should be transferred back to Section "B" so that Judge Lemelle's extensive and long-standing experience with the relevant facts and issues can be applied in resolving this final piece of litigation arising out of the sulfur fuel incident.

### III. Conclusion

For the foregoing reasons, Defendants respectfully suggest that the Court transfer this case back to Section "B" for all further proceedings.

Respectfully submitted,

/s/ George Denegre, Jr.
George Denegre, Jr. (La. 8387),T.A.
LISKOW & LEWIS
701 Poydras Street, Suite 5000
One Shell Square
New Orleans, LA 70139-5099
Telephone: (504) 581-7979
Facsimile: (504) 556-4108

David M. Rodi (*pro hac vice*)
Texas State Bar No. 0079733
Louis E. Layrisson III (La. 31829)
BAKER BOTTS L.L.P.
910 Louisiana St.
Houston, TX 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522

ATTORNEYS FOR MOTIVA ENTERPRISES LLC
& SHELL OIL COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on October 24, 2011, I electronically submitted the foregoing document with the clerk for the U.S. District Court, Eastern District of Louisiana, using the court's electronic case filing system. The electronic case filing system sent a "Notice of Electronic Filing" to all counsel of record who has consented in writing to accept this Notice as service of a true and correct copy of this document by electronic means.

By: /s/ George Denegre, Jr.
George Denegre, Jr.

1066392_1.DOC